The next two cases on the calendar, Smith v. Sahl and Thomas v. Sahl, are submitted on the briefs. We're going to jump a little bit for a moment, we're going to hear Heimrich v. U.S. Department of the Army, case number 18-36005. Good morning, my name is Sean Yancey, attorney for the appellant Garry Heimrich. This is a case based on the de novo standard overview about the definition of the phrase same matter, as it relates to the employees who have filed a discrimination complaint after filing a union grievance. The court should find in favor of the appellant for the following reason. The Department of the Army improperly dismissed Garry Heimrich's claim that he was subjected to a hostile work environment. This is improper because the Department of the Army deemed it the same matter as the step two grievance that the union filed on Garry Heimrich's behalf. The law does not preclude an employee from raising a different matter in a subsequent grievance or complaint. Well, let me ask you this, how do you define matter? How would you define matter? We have some case law out there. Yes, sir. Okay, so let me rephrase the question, why shouldn't we follow what the, is it the Federal Circuit has decided? Yes, Your Honor. The underlying incident. The underlying action. Employment action was the reason that it was dismissed. It was assumed into that, but the removal had nothing to do with the hostile work environment claims. I believe that the conduct of the co-workers makes it a different matter. So as I understand the existing case law, we don't have a case on point, is that the Yes, Your Honor. Right? That was it. And then in the employee grievance that was filed on his behalf by the union, they listed, I think there was three or four paragraphs of conduct, right? Yes, it was. And then they cited some provisions from the collective bargaining agreement. Yes, it was very bare bones and discussed. Gary Heimrich was removed based off of a charge of AWOL, failure to follow instructions. And in the union grievance, they defended his position as it related to those issues. The reason that the discrimination complaint, at least for the claim of harassment, is different is because that focuses on the misconduct of his co-workers. Okay, so then we go over to the EEO complaint. And he makes it a little bit clearer there about the discrimination. A few more facts are alleged there, correct? Yes, Your Honor. But he's complaining about the termination, is that right? He's complaining about the harassment that he faced as well. Well, but I thought he was upset that he was terminated. And the reason why he was terminated was because they discriminated against him and retaliated against him. Your Honor, I would like to—in his discrimination complaint, he filed it pro se on his own. He also raised whistleblower appraisal claims in it as well. Why that claim is separate is because it was not just the removal but the discrimination that he faced because it affected him personally. They attacked—his co-workers attacked his wife, his children. They degraded him in the workplace. And I think that that affected him personally more so than defending whether his leave was justified. Where in his EEO complaint does he mention the word hostile work environment? He—the last page of his discrimination complaint, he attached an extra page. He didn't use the term of art hostile work environment, but that is essentially what he meant. When you say that, I'm looking, I think, at the page you're referring to. He says, I believe that the grounds given by management for my removal from the Corps of Engineers are false, and the real reasons are, one, retaliation by that complaining about, you know, to the merit selection—discrimination against me for being a recovering alcoholic and using medical leave, and four, having an African-American wife and children. Those are all stated as the real reasons for his removal. And that's, of course, what his union grievance was about, his removal, right? Well, in the first paragraph, he talks about employees that made comments towards him that— and these weren't necessarily an exhaustive list of everything that he went through. As I've stated previously, it was a per se, pro se complaint that he filed. He wanted these matters investigated because there was a pattern of discrimination racially. Even though he was Caucasian, he was subjected to inappropriate comments that deeply affected him that he wanted investigated. Counsel, on page 38 of the record, it appears that under section 15B of the EEO complaint, your client said specifically in response to the question whether or not the issues identified in section 10 had been filed under the grievance procedure, he checked yes, that union-negotiated grievance had been filed. Why shouldn't that be considered an admission that this was the same matter that he filed the union grievance for? Because he— He said it himself. Honestly, he did not know what he was doing. I understand that there are bulleted points and things on this complaint that people who are familiar with the process can easily understand. But Mr. Heimrich, he was suffering from a depression at the time. He was a recovering alcoholic that was going through rehabilitation program. He wasn't necessarily thinking as clearly as he could have been. He wanted to actually terminate the union's representation, but he did not use the magic language to do so. So you think we should disregard the fact that he checked that these issues had been the subject of a union grievance? I don't think that you should disregard it, but I think that there should be weight, and I understand that the court has given weight to people that make mistakes in their filings when they are pro se because they aren't familiar with this process. He had no idea that, one, the union grievance was going to stand. At some point, the union simply withdrew the grievance without his permission. So it just went nowhere, and he didn't understand what exactly was happening with the situation. It sounds like you might be arguing that the way to look at these is, are there different theories involved or different topics involved? It is a complicated situation because Mr. Heimrich retained our law firm several months after the fact and didn't have a clear, he didn't know how to communicate what was happening to him. So it took months. I want to get back to my original question, which was how would you ask us? Our circuit has never addressed this issue. We could go along with what the federal circuit said. We could modify it somewhat. There are a couple of district court opinions that talk about topics. What would you have us do now that you've thought about it and read the cases and looked at these two different documents? So what would you have us do? Sir, I believe the Fourth Circuit in Zizoul developed a test that I think is applicable here. I believe the test here is whether an arbitrator presented with the employee's grievance would be obligated to reach the issue of Heimrich's racial harassment claim in resolving his Step 2 grievance challenge. Okay, I saw that. That's what I was trying to get you at. Yes. I saw that opinion. And so let's step that, let's walk that out for just a minute. Yes, sir. Okay, so let's say the arbitrator who was hearing the union grievance looked on the form. On that union grievance form, there is a reference to force something of the collective bargain agreement, which covers discrimination. Now, would a reasonable arbitrator, seeing that check, inquire about discrimination? Like, what is this about? What are you complaining about here when you check the box? Discrimination? I believe you're correct, but what's different in this case is that it was the harassment from coworkers as opposed to his supervisor in chain of command. I believe if the arbitrator would inquire if it had been his direct supervisor or a supervisor in his chain of command had subjected him to ---- Well, you would think that a reasonable arbitrator would say, well, look, you've raised the issue of discrimination, so tell me, what is the basis for your alleged discrimination? Yes. Okay, and you would think then that he might answer that question and say, well, my wife is African American, and they don't like that, and they have made comments about that. But I believe the slippery slope here is because it's a removal action, anything that happens in his place of employment could be subsumed into with that line of thinking. But had it been a suspension or any other type of personnel action, if you look at it from the view of a personnel action instead of necessarily a removal, because everything is relevant when you're looking at it through the frame of a removal because you're trying to save your job. So I understand this whole scheme to be that Congress wanted to give, you know, some credence to the whole collective bargaining process and wanted to let employees, you know, try to resolve their disputes through that collective bargaining agreement. And it does provide, as I understand it, it does provide, if you go to the arbitrator, then you can go to the EEOC, and then you can file. If you follow the grievance, you can end up in federal court eventually, if I understand that correctly. So, I mean, it seems like there's, you know, I understand the frustration here because a lot of this stuff is probably written by pro ses. I mean, they don't know what they're doing. I understand the frustration. On the other hand, Congress clearly tried to focus, you know, either you go through the grievance route or you go through the EEO route, one or the other, but not both. Your Honor, in theory, that would work perfectly well. In Mr. Heimerich's matter, he initially had the union work on prior disemployment actions. He expressed dissatisfaction with the union. He did not use the magic language, I want to terminate this relationship, but he did not want them to file the step two grievance on his behalf. What's your best case that supports your argument that he can now switch from union grievance to EEO procedure? I believe the Fourth Circuit Zazuul case is the best case because it actually talked about an incident of harassment and a reassignment, and they discussed how those two were separate matters. And I think the same logic applies here, that you can have a harassment claim and you can challenge a personnel action without them being subsumed into each other. You know, you're over your time, but I'll give you just a minute for some time for rebuttal. Thank you, sir. Okay. Thank you. Thank you. May it please the court. Jared Hager on behalf of the Pelley United States. This case raises a simple dispositive question. The legal question is whether or not the first filed grievance and the later filed EEO formal complaint raise the same matter. And to your point, Judge Paez, the government advocates that you adopt the federal circuit standard. That same matter looks to the underlying employment action. Every case reported in a federal court has some variation of that test from Bonner, and we believe that's the appropriate test in this case so that we don't look at specific factual allegations. We don't look at specific bases of discrimination, and we don't look at remedies that are sought, partly because this is a basic notice pleading standard for people who might not be as familiar with the process. So we think that those tests are more appropriate. To correct one point. So let me ask you about that. So I read the Zul. Actually, it's a district court case. Do you read that as a refinement of the Bonner test, or is it a little bit different? It's a little different because first it asks whether or not a topic was raised, and this test was first set forth in FASHA v. Cisneros out of the Eastern District of Pennsylvania, and that's cited and discussed in our brief. If it raises the same topic, same matter. Secondarily, if it doesn't raise the same topic, it's a disjunctive test, and we look at whether or not an arbitrator would necessarily have to inquire into a matter. And that's for the basic purpose of exhaustion of that claim so that when it gets to the EEOC hearing, there's more of a developed record. Now, that's not to say any grievance is bound by what the arbitrator may or may not look into because the federal regulations allow for amendment of like or reasonably related claims when you get to the EEOC hearing on appeal from an arbitration award. And so it's not like it closes the door. Explain that again. So when they get to the EEO hearing. Yeah. I guess there is some frustration here that counsel is trying to elaborate on, which is that if you have a pro se, I know in this instance he had his union representative craft his, filed by the union, craft his grievance charge. More so than that, Your Honor, he was actually represented in the EEO process. That was Glenn Solomon, and that's listed on the form. He's a lawyer? He's a lawyer. Yeah, he's been disbarred. He's a would-be lawyer, right? He was advising. So Mr. Solomon represented Mr. Heimrich at the OSC and the MSPB. So initially this retaliation claim was appealed to the MSPB and then abandoned. And so that retaliation, which is the genesis of this whole claim, was abandoned. Let's just put that aside for a moment. I mean, maybe I'm wrong. Maybe you can help me better understand this process. But isn't it not possible that people who want to seek or file a grievance will do it on their own? For sure. The union always is going to do it for them. No. This collective bargaining agreement and federal law requires that someone have the opportunity to raise that issue themselves or with the union on their behalf. And so people aren't very sophisticated. They don't know how to do it. But you're telling me that grievance that may not be well thought out goes through the local process and may end up at an arbitrator, then it gets to the EEOC? From the arbitrator award, you appeal to the EEOC hearing. That's 29 CFR 1614.401. Let's say at that level it's a little bit more complicated. So the person manages to get somebody to help him or her. You're telling me they could amend the charge at that point? Yes. That is 29 CFR 1614.106D. It allows amendment as a matter of right for like or reasonably related claims. The circuit has also held that in Farmer versus EEOC and a litany of other cases, BKB, et cetera. Now, I do want to correct another point of the record, though. So not only was Mr. Heimrich represented in the formal EEO complaint and on appeal, Judge Rawlinson has identified one admission in the formal EEO complaint. There's also another admission by the attorney of record and the appeal of the EEOC matter. Now, secondarily on the equities, when the agency denied the EEO formal complaint because it found that he had raised those matters in the grievance, the agency advised Mr. Heimrich and his counsel to raise those issues of discrimination in the grievance procedure. At that point, the grievance procedure was still ongoing. It was three weeks later that Mr. Heimrich voluntarily abandoned not only the grievance process but also the MSPB process to put all of the eggs in the last filed EEOC, the EEO matter, the statutory process. And we believe those are important equitable considerations that counsel against finding that this case should either be remanded or reversed. Let me ask you, has every court that's considered the meaning of matter adopted the Bonner? In some. Let's talk about circuit court. Yes. In some form or another. And that's Guerra v. Cuomo, which is Justice Ginberg when she was on the D.C. Circuit. That's the litany of district court cases, including in this circuit, which is Santos-Rios, affirmed in a non-published. But we believe that there's an important point there to be made for this circuit to adopt some standard. Now, on the facts of this case and whether or not the two do raise the same matter, Mr. Heimrich has argued that the two were completely unrelated because this is a coworker harassment. But look what was before the district court. Three items, the federal court complaint, the EEO formal complaint, and the grievance. Now, I want to just draw your attention to the federal court complaint that Judge Hernandez was faced with. Paragraph 21 of that complaint ties together a story of retaliation from Mr. Heimrich raising safety concerns. That retaliation spawned harassment, harassment by both supervisors and coworkers. Now, these allegations were assumed to be true as the district court had to on a motion to dismiss on the pleadings. And we believe that those inextricably tied together whatever claim of harassment might be in the formal EEO complaint. And again, the district court found that it wasn't even raised as hostile work environment. As Judge Gilman noted, that it's not actually referenced. But more to the point, the district court complaint doesn't reference hostile work environment as either a claim or a ground for relief. What Mr. Heimrich sought in the district court was remand back to the agency to investigate whether or not the complaint was improperly dismissed because it raised EEO retaliation in relation to the proposed removal. The district court correctly found that the proposed removal and the actual removal merge. And at that point, and the EEO retaliation is clearly raised in both the grievance and the EEO complaint. And so at that point, we believe that the same matter test was satisfied under any standard that you might want to adopt, whether it's the FASCHA topic arbitrator or whether it's Bonner, just look to the underlying employment action. And further to that point, when the grievance sets forth collective bargaining agreement 4.1, it automatically raises the whole panoply of discrimination claims. I saw that in your I saw that in that argument in your brief. Any arbitrator is going to have to ask, why did they violate 4.1? Why were you deprived of an equal employment opportunity at your workplace? That is the matter. If you want to look beyond termination, it's denial of equal employment opportunity as referenced by collective bargaining agreement 4.1. The last point I'd like to make on the equities of this case, in case you are interested in those, is that not only did Mr. Heimerich have notice to amend his grievance, an opportunity to amend both on the time and under the regulation, but he also had experience and representation in both of those matters. He had been through the grievance process multiple times before successfully with this union, and he had been represented by Mr. Solomon at the MSPB to challenge the retaliation for the safety concerns and in the formal EEO process. Both of those admissions where he says that I've raised these matters in both an MSPB and in an EEO proceeding should have to bind Mr. Heimerich. You know, if he has a claim against his counsel, that's a different claim. But at this point, this Civil Service Relief Act or Reform Act is really trying to balance this value of collective bargaining agreements with being an unwary trap for litigants. I don't think Mr. Heimerich can sustain an unwary trap in this case where he was advised on the EEO dismissal. Go raise these claims in your grievance. He had the opportunity to do that, and he had counsel. So we don't believe this is a situation where it was an unwary trap for Mr. Heimerich. There's no more questions.  Okay. Thank you, counsel. Thank you. Thank you. I'm curious how you respond to Mr. Hager's point that your client was advised that he could amend his union grievance, and yet he chose not to do so. What do you say about that? Your Honor, my client completely denies that. And my apologies for misspeaking on Mr. Heimerich's prior representation, but he had serious issues with that representation. As you can tell from this EEO complaint where he raised whistleblower appraisal, if someone that was a barred attorney had drafted this, it would have been more artfully done. This is essentially the story of a man who trusted the union to work on his matter and file a grievance, and they submitted a one-page, two-paragraph rebuttal for essentially something that contained many issues and many theories of what was going on. He subsequently hired this attorney that also either had serious flaws in his communication or did not understand employment law. Mr. Heimerich made informal contact, actually, with Mary Bretz, the EEO counselor, in June of 2016. She unnecessarily delayed the formal complaint until September of 2016. If there had been a legal representative, especially from my firm, it would not have been delayed for three months for no reason. Mr. Heimerich maintains to this day that he has never received a decision on that grievance, and he was never informed that he could simply appeal to the EEOC or the OFO on that matter, or else he would have done that. Well, his grievance was dismissed, wasn't it? The union withdrew the grievance, but he's saying that he never got a notice or a decision or any type of... Nobody told him that we're withdrawing this grievance and we're washing our hands of this matter. Right. Unfortunately, we represented him much later in the process, and he came with a stack of documents, and he never had any type of closure or the proper route to channel this grievance, or else he would have. Okay. Okay, counsel. Thank you very much. We appreciate your arguments this morning. The case is submitted at this time.
judges: Gilman, Paez, Rawlinson